No. 4111

**Second Circuit**

(Second Division)

**KNOX v. LOUISIANA LONG LEAF LBR. CO.**

(December 9, 1931. Opinion and Decree.)

Fern M. Wood, of Leesville, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

TALIAFERRO, J. This action is brought under the Employers' Liability Act (Act No. 20 of 1914, as amended) by Maggie Knox, who claims to be the widow of one Peter Knox, who was accidentally killed in the course of his employment with the defendant company. It is alleged that the deceased was receiving a daily wage of $3, and compensation in the amount of 46¼ per cent of said daily wage for the period of 300 weeks is claimed for the benefit of plaintiff and her minor child by a former marriage, it being contended that they were dependent upon the deceased for support and maintenance.

The defendant company answering, admitted the accidental death of the said Knox and his employment, as alleged, but denies that the plaintiff was the legal wife or widow of the deceased, for the reason that she knowingly had a legal living husband from whom she had not been divorced at the time her marriage to the deceased, Knox, was consummated, and further that neither the plaintiff nor the said minor child were living with or dependent on deceased, at the time of his death.

Plaintiff's suit was dismissed, and her demand rejected. She appeals.

On the question of whether or not the marriage of Maggie Knox to the deceased, Peter Knox, was in good faith, we find the record discloses the following:

That the plaintiff Maggie Knox married one Ed Rogers in the month of December, 1921, and they separated in March, 1923, and she heard nothing further from him until 1924; and in the year 1927 he visited her at Peason, La., at which time she says he told her he had secured a divorce from her. However, during the year 1924 she began living with Peter Knox, without marriage, and continued so to live with him during the years 1924, 1925, 1926, 1927, and up until 1928, when they married. She continued to live with Peter Knox until about November 15, 1929. He was accidentally killed on the 31st of December, 1929. Maggie Knox's testimony shows that the only information she had that a divorce had been obtained from her by Ed Rogers in the state of Texas was that he told her and her father that he had been divorced from her. She made no investigation to have this information confirmed. The records of Jefferson county, Tex., disclose no suit by Ed Rogers against plaintiff for divorce. Our conclusion is that under the evidence a sufficient showing has not been made by the plaintiff to convince us that she married Peter Knox in good faith in the year 1928.

Concerning the question of dependency of this plaintiff on the deceased at the time of his death, we will merely quote the

evidence of this plaintiff found in the record, which we believe clearly shows that she was living in adultery with another, and was being supported by him, at the very time of the death of Peter Knox. Other testimony in the case amplifies that given by her, and confirms the position of the defense on the question of dependency. Her evidence is as follows:

"Q. And after he went to Fisher, he moved you back to Montrose?
"A. No, sir.
"Q. After he left Montrose, who lived in the house with you?
"A. A man held the house for me, Charlie Tussen.
"Q. He lived with you?
"A. He had one room and I had one room.
"Q. How many rooms did the house have?
"A. Two, he stayed in the kitchen.
"Q. Did the house have two rooms and kitchen?
"A. Two rooms with the kitchen.
"Q. When you got back to Montrose Camp, did you and Tussen live in the same house until Peter got killed?
"A. The man held the house for me till Peter got killed.
"Q. He lived there after that time?
"A. No, sir.
"Q. Are you certain of that?
"A. Yes, sir.
"Q. Who lived with you?
"A. John Weston held the house for me then.
"Q. What do you mean—held the house?
"A. I couldn't hold the house myself.
"Q. You and Tussen lived in the house from the time Peter went to Fisher until Peter got killed?
"A. Yes, sir.
"Q. Who paid the rent?
"A. Charlie.
"Q. Who paid the grocery bill?
"A. Peter give me money and I paid mine and he paid his."

In Milton v. Long-Bell Lumber Co., 165 La. 336, 115 So. 582, 584, our Supreme Court has definitely settled the question of the wife recovering for compensation where the spouses are living separate and apart at the time of the death of the husband, and we quote as follows:

"We think the facts show that at the time of decedent's death, and for three or four months preceding his death, the relator and the deceased lived separate and apart, by mutual consent; that relator maintained herself during that time, and, when her husband died, she cannot be held to have been dependent upon him for support, within the meaning of the Employers' Liability Act."

Therefore, even though the trial court erred in holding that the marriage of the plaintiff in this case to the deceased was not consummated in good faith, we find that she cannot recover for the reason that at the time of the deceased's accidental death she was living separate and apart from him and in adultery with another party, and was not dependent upon deceased for support. See paragraph (K), subsection 2 of section 8 of the Compensation Law, as amended by Act No. 85 of 1926, which reads as follows:

"No compensation shall be payable under this Section to a widow unless she be living with her deceased husband at the time of the injury and death, or be then actually dependent upon him for support."

We find in the record a written opinion of the trial court disposing of both points raised by the pleadings, and which, we think, correctly rejects plaintiff's suit for the cogent reasons therein assigned. This opinion we adopt. It is in part as follows:

"In 1921 the plaintiff Maggie married to a negro by the name of Ed Rogers and from this marriage there was born the child named Edward Rogers, which child the plaintiff has the custody and is claiming compensation for in this suit. Some

time about 1923 the plaintiff Maggie and her husband separated and her husband Ed Rogers went to Texas and thereafter she took up and lived with Peter Knox. On September 3rd, 1928 she married Peter Knox and lived with him until about two months before his death. Maggie testified that in 1926 or 1927 or thereabout her former husband came to Peason to see her while she was living there and stated that he had divorced her in Texas, in Jefferson, (Co.) and that Rogers after telling her that he left again. The father of Maggie also says that Rogers came to De Ridder and told him that he had been divorced from Maggie. So Maggie contends that she was in good faith and did not marry until she believed from what her husband told her and her father that they were divorced. I was not impressed with the account given by Maggie and her father that Ed Rogers came back from Texas to tell them he had been granted a divorce, in fact I do not believe that Ed Rogers ever came back. * * * The plaintiff in this case had been married and was married at the time she married Peter Knox unless a divorce had been rendered which was not shown by the evidence; however if she married in good faith believing that a divorce had been granted she would be entitled to recover in this case, but the Court is of the opinion that the plaintiff did not marry Peter Knox in good faith believing she was divorced as she made certain statements to a witness for the defendant about a divorce in Jefferson, Texas.

"The plaintiff went to see Peter Knox a month or two before his death at Fisher and she stated that she went back to Montrose to look after their household goods as there was no house to live in at Fisher. The evidence shows that at the time that Peter Knox was killed she was living in the house with one Charlie Tussen at Montrose and that Tussen was paying the grocery bill, and from this evidence I am of the opinion she was living in adultery with Tussen and was not being supported nor was her child by Knox at the time of his death. From all of the evidence in the case and the law applied thereto, it is the opinion of the Court that the demands of the plaintiff should be rejected."